# Case No. 686.

## AYLING v. HULL.

[2 Cliff. 494;[1] Merw. Pat. Inv. 91.]

Circuit Court, D. Massachusetts. Oct. Term, 1865.

PATENTS FOR INVENTIONS — PATENTABILITY—NOVELTY—INTERFERENCES—INJUNCTION —ABANDONMENT.

1. The presumption arising from the introduction in evidence of his patents, that the complainant is the original and first inventor of the invention therein described, may be regarded as strengthened by the fact that the complainant's application and respondent's patent were declared in interference at the patent office, that the cases were appealed to the superior court of the District of Columbia, being at every step decided in the complainant's favor, the respondent, during the entire pendency of the interferences, asserting himself to be the original and first inventor.

2. It was held that the subjects-matter of the complainant's patents were not the same as that of the English patent of Alexander Parker.

3. It is competent for the circuit court to entertain a bill of complaint, founded on letters-patent of the United States, for an injunction,

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission. Merw. Pat. Inv. 91, contains a partial report only.]

for an account, or for the repeal of an interfering patent for the same invention.

4. The motion for injunction is addressed to the discretion, and the court may or may not, according to the circumstances, order issues for a jury.

5. An inventor, at the time of making his discovery, intended to apply for letters-patent thereon; but having been incorrectly advised that his invention was anticipated by a patent of prior date, he kept his improvement a secret, practising it for his own benefit; and when aware that he had been misinformed, he filed his application without unnecessary delay. *Held*, that he had not so postponed his application for a patent, and concealed his invention, as to forfeit his right to the grant of a patent.

In equity. This was a bill in equity in which the complainant alleged that he was the first and original inventor of an improved process for changing, curing, or treating caoutchouc, and also of an improved product from caoutchouc, which product was the result of the said process. The two inventions were embraced in separate patents, each bearing the same date, to wit, May 10, 1864. The prayer of the bill of complaint was, that two certain letters-patent granted to the respondent might be adjudged and decreed to be void throughout the United States, and for an injunction and for an account. The invention described in the first patent of the complainant was a new process by which caoutchouc and its compounds were changed or cured, so that they were unaffected by changes of temperature, by contact with fatty and acid substances, and by exposure to the atmosphere, and so that their strength and elasticity were increased. The change produced on caoutchouc was similar to that effected by heat in the presence of sulphur, known as vulcanization, except that there was no sulphur left in the rubber, nor were there any other agents left therein tending to its injury or destruction; and except also, that the change was more permanent and uniform in its character. The patentee stated that the process was essentially "a cold one," which could be successfully practiced in any degree of natural temperature, and might be described as consisting in bringing the caoutchouc into contact for a suitable time, with a recently discovered fluid solvent thereof, known in commerce as "carbon spirits," when the fluid was combined with chloride of sulphur in the proportion of about one measure of chloride of sulphur to fifty of the carbon spirits. In the other patent, the specification described the product or article of manufacture as chiefly composed of caoutchouc, and combined with carbon spirits and chloride of sulphur. It was charged upon the respondent that he obtained and held two certain patents, which covered the same inventions as those secured to the complainant in the patents, upon which the suit was founded. Of the patents of the respondent, one was dated December 20, 1864, and entitled "an improvement in treating caoutchouc," the other, March 10, 1863, and was upon an improved caoutchouc or india-rubber. It was alleged in the bill of complaint that the patents of the respondent were an interference with the patents of the complainant, and that the respondent refused to acknowledge the rights of complainant, and was using and practicing the inventions in violation of complainant's rights. It was admitted that the patents of the two parties were upon the same inventions. Several defences were set up in the answer, of which the following are all that require recapitulation:—

First, that neither party was the original and first inventor of the improvements, but that both were old and belonged to the public. To prove this, an English patent granted to one Alexander Parker was introduced in evidence.

Second, inasmuch as the complainant's patents were issued only a short time before the filing of the bill of complaint, the court ought not to order an injunction, or enter any decree affirming the validity of the patents, until the same had been judicially established; and to that end the respondent asked that proper issues might be framed, and the cause sent to a jury.

Third, that the defendant not only did not use reasonable diligence in completing the alleged discovery, but that he secreted and concealed whatever he had accomplished, for his own benefit, and for such length of time that he had no superior equity over the respondent, and therefore that the court should leave the parties to their legal rights.

The more important portions of the evidence applicable to the first defence may be gathered from the opinion of the court, when considering the question of originality, and the facts upon which the third defence was based appear in the discussion, by the court, of that point.

B. R. Curtis and Chauncey Smith, for complainant.

F. A. Brooks, for respondent.

CLIFFORD, Circuit Justice. The patents of the complainant being introduced in evidence, the prima facie presumption is, that he is the original and first inventor of what is therein described as his invention, and the conduct of the respondent may be regarded as strengthening that presumption rather than as weakening it. The record shows that he applied for patents for the same improvements, and that an interference was declared by the patent office in each case, between his applications and those made by the complainant. The first hearing was before the examiner, and he decided against the respondent. Appeals were taken in due course of business, to the board of appeal and to the commissioner, both being decided in the same way, and he thereupon appealed to the ultimate tribunal, but met with no

better success. Throughout these controversies, he steadily and constantly maintained the validity of his applications, and still continued to press his claims for patents until the same were granted. The record also shows that having succeeded in obtaining his patents, he brought a suit against the complainant, charging him with infringement of his patents, and claimed that he, the respondent, was the original and first inventor of the improvements therein described and secured. Being unable to show any right to enjoy the property of the invention himself, he now denies the originality of invention either in himself, or the complainant, and seeks to destroy it as a right of property in the complainant. Ungracious, however, as the defence is, still, it is a sufficient one if it be proved. But it is not proved, and the pretence has no foundation whatever. On the contrary, the testimony introduced by the complainant shows, to the entire satisfaction of the court, that the complainant is, as he alleges himself to be, the original and first inventor of the improvement. The patentee of the English patent took, as he states in his specification, forty parts of bisulphuret of carbon and added to it one part of chloride of sulphur prepared as neutral as possible, mixed well the ingredients in a suitable vessel, and immersed caoutchouc in sheets or other forms in the mixture, allowing them to remain therein a longer or shorter time, according to the thickness or substance of the article. The fluid used by the complainant, is the product of the distillation of the natural petroleum or rock oil, and is combined with chloride of sulphur in the proportions before mentioned.

The expert testimony offered by the complainant, shows that coal-tar naphtha has been long known as the light oil produced in the decomposition of coal, when sudden and high heat is applied to it. The statement is that it consists, when highly rectified, in a large part, of a substance called by chemists benzole or benzine, and that it has specific characters, although it is a mixture. The principal expert witness called for complainant states that it has a low boiling point, but congeals wholly or in part at about the temperature of freezing water. It forms compounds of decomposition with nitric-acid, one of which crystallizes and has the composition of compounds in the benzole series, derived from benzoic acid. One of its peculiar physical characters is, that although very volatile, it does not diffuse in air at forty degrees, and cannot, therefore, be used in the manufacture of air-gas. The witness states that he has been acquainted with the article, under different names, such as coal-tar naphtha, light-spirits naphtha, crude benzole, and rectified naphtha, for more than twenty years. Chemists, he says, have known it more than forty years, under these and other names, and that he has experimented with it at different times within the period since it came to his knowledge. On the other hand, he states that petroleum naphtha or carbon spirits is a fluid distinct from the other hydro-carbons, both in physical and chemical characters, and that it constitutes a new product, which cannot be included in any other known series. He describes it as a light mobile fluid, obtained in the purification of crude petroleum oil, and by the slow distillation of bituminous coal at the lowest possible heat. His representations are, that it has peculiar physical and chemical characters, as, for example, it has a high boiling point much above that of water, and yet it diffuses in air at a temperature of forty degrees rapidly, and, consequently, becomes an efficient agent in the production of what is termed air-gas. Another characteristic is, that it exhales rapidly and completely at a temperature of sixty degrees without a particle of residuum or without becoming colored, and it may be mixed with other bodies without producing change of color. When exposed to cold, it bears the reduction of fifty degrees below zero without becoming solid, and still remains a mobile fluid, and when mixed with nitric-acid, its chemical property is such that it does not form nitrobenzole by decomposition, nor can the products of the benzoic series be then obtained from it. The conclusion of the witness is, that its elements are differently united from those of coal naphtha, or any of those resulting from the application of a high temperature to coal; and there can be no doubt, in the judgment of the court, that his conclusion is correct. The evidence also shows, that the product obtained by the complainant is new, and that the respondent is plainly in error in the view he puts forth upon that subject. Jurisdiction in suits of this nature is conferred upon the circuit courts by an act of congress, and it is competent for the court to entertain a bill of complaint for an injunction and an account, or for the repeal of an interfering patent for the same invention, at any time after the letters-patent are granted. Undoubtedly the application for injunction is in all cases addressed to the discretion of the court, and it may be that the court, under some circumstances, might order issues to a jury in a suit like the present, for the repeal of an interfering patent. Suffice it to say, however, there are no circumstances in this case which afford any proper ground for the last-named application, and the respondent has no claims for any delay, if the complainant is entitled to a decree.

The theory of fact on which the third defence is founded is not correct. The complainant did exercise reasonable diligence in adapting and perfecting his invention, as appears from all the evidence, when properly understood. When he made his invention he intended to apply for a patent, and doubtless would have been so, had he not been misled and been induced to believe that his in-

vention had been anticipated. While laboring under that impression, he decided to keep it a secret and practise it for his own benefit; but the evidence clearly shows that as soon as he was undeceived, and it came to his knowledge that he had not been anticipated, he began his preparations for application for a patent, and obtained it without unnecessary delay. None of the defences set up by the respondent can be sustained, and they are accordingly overruled. The complainant is entitled to a decree as prayed in the bill of complaint, and for his costs.